## LEWIS vs. LEWIS.

1. The act of Congress, which authorizes the Register and Receiver to decide upon preemption rights, makes their decision final, until reversed by the Commissioner of the General Land Office, or the President.

2. A State court will not interfere to set aside their decision, unless it be affected with fraud, or coupled with a trust. It has no right to interfere with, or to control the officers of the General Government in the disposal of the public lands.

3. *Qu :* Will a court, in any case, interfere until, a patent issues, the patent of the United States not being compelled to issue a patent to the holder of a certificate, but empowered to issue to the rightful claimant?

4. But where a party claiming a right under the act of the Federal officers, calls upon the State courts to aid him in depriving another of a right conferred by the laws of the U. S., although no title have passed, they will interfere, and determine the rights of the parties : As where A, claiming under a certificate, brings ejectment against B, who is entitled to a pre-emption to the land, B will be protected in his right.

5. The judicial acts of Executive and Ministerial officers, are not considered as judgments, from which there is no relief, but by appeal, writ of error, or of false judgment. They are only acts which may be performed by deputy.

6. A general charge of a fraudulent combination, &c., usually inserted in a bill, is not sufficient to charge fraud ; there must be a specific allegation of fraud.

## ERROR to Platte Circuit Court.

Jones, for Plaintiff in error.

### POINTS AND AUTHORITIES.

1. That the facts stated in the bill and admitted by the demurrer, show the complainant entitled to a pre-emption right to the land in dispute, by the virtue of the act of Congress of the 1st June, 1840, and the acts to which it is amendatory. (See Acts.)

2. That Jesse and James Lewis, being joint pre-emptors on n. w. qr. s. 18, t. 52, r. 34, were confined to the same, and had no right to any other lands by virtue of the act 22d June, 1838. (See the act.)

3. That the pre-emption right of complainant to the land in dispute, is superior in dignity to that of defendant, and must prevail over that of defendant, if free from objection. (Rev. Stat. Mo. 234, sec. 2; 3 Condensed Reports of the Sup. Court U. S. 238; 5 Mo. Rep. 346.)

Lewis vs. Lewis.

4. That the decision of the Register and Receiver, in regard to pre-emption rights, is conclusive only against the United States, and others are left to the courts for their remedy. 1 Mo. Rep. 398, Bird, et al, vs. Ward & Cravens.

5. That this court can look beyond the certificate and patent of defendant, and examine the progressive stages of title from its incipient state until its consummation, and decree title in complainant if he has the superior equity. 7 Mo. Rep. 621 ; 1 Peters' Rep. 664; 3 Condensed Rep. S. C., U. S. 333.

6. That the defendant having no right of pre-emption to the land in dispute, the Register and Receiver acted beyond the pale of their authority in giving him a certificate to the land in question ; the certificate therefore is void. 5 Mo. Rep. 346; 1 Peters' Rep. 340; 10 Peters' Rep. 478 ; 6 Peters' 720 ; 15 Peters' Rep. 105-'6 ; 13 Peters' Rep. 510 ; 9 Cranch Rep. 98.

7. That the pre-emption law is a quasi contract. 2 Kent Com. 271-'2.

8. That the defendant is guilty of actual fraud in obtaining the certificate to the land in question, he having actual notice of the right of complainant. 5 Randolph Rep. 453; 6 Peters' Rep. 716.

9. That defendant having obtained the certificate to the land in question, by fraud and imposition, this court will relieve complainant against it. 1 Johns. Chy. Rep. 405 ; 7 Johns. Chy. Rep. 182.

KITRLEY, for Defendant in Error.

I rely in this court upon the following propositions to sustain the decisions of the Circuit Court :

1st. The acts of Congress conferred power on the Register and Receiver of the Platte Land Office, to decide upon complainant and defendant's claim to the rights of pre-emption to the land in controversy, and that their decision in that controversy was a judicial and not ministerial act, and is conclusive between the parties in this case. See 1 Peters' United States Rep. 340, the case of Elliott, et al, vs. Piersol, et al, 13 Peters' Rep. 511. Wilcox vs. Jackson ; 1 Peters' Rep, 668-'9, Ross vs. Barland.

2d. The circuit court can have no jurisdiction in this cause, under the allegations and facts set out in the bill. If it be claimed on the ground of the alleged fraud, then I insist the allegations of the bill are wholly insufficient for such a purpose, there being no sufficient specification of such fraud, in time, place or circumstance, the same being

left to the general formal allegation, as in all bills, not traversible from its generality.

3. This bill seeking to revise and annul the decision of the Register and Receiver, makes no portion of the proceedings before those officers, parts of the bill, and offers no excuse for not doing so, and in that respect is defective and demurrable.

Scott, J., delivered the opinion of the court.

This was a bill in equity, filed by complainant below, who is plaintiff in error, against the defendant, praying that the defendant may be decreed to convey to complainant a half quarter section of land, for which he had improperly, and against law, obtained a certificate of the right of pre-emption from the Register and Receiver of the U. States Land Office, in the north-western land district.

There was a controversy between complainant and defendant relative to a right of pre-emption to a half qr. section of land, under the acts of Congress of June 22, 1838, and June 1, 1840. The Register and Receiver determined that the right was in the defendant, and upon an appeal to the Commissioner of the General Land Office, that decision was confirmed, and the defendant was permitted to enter the tract of land. The complainant thereupon filed this bill for relief, against the decision of the Register and Receiver, as being erroneous, and contrary to the laws of the U. States. It does not appear that any patent for the land has been issued. The bill was demurred to for want of equity, and the demurrer was sustained, and the bill dismissed; to reverse which decree this writ of error has been sued out.

The respective claims of the parties to the land in controversy, are not stated at more length, because it is not deemed necessary to a correct understanding of the opinion in the cause.

In the case of Stephenson vs. Smith, 7 Mo. Rep. this court held, that if an individual obtains a patent for land from the U. States, and is affected with any fraud, or trust, in relation to it, a court of equity will regard him as a trustee, for those who may have been injured by the fraud practiced, or are entitled to the benefit of the trust. This doctrine, it was supposed, did not violate any engagements contracted with the General Government by this State; nor was it imagined that the State courts in entertaining such a jurisdiction, acted in hostility to the laws of the U. States, but merely performed that which the courts of the U. States would have done had they been entrusted with original

jurisdiction in such cases. The object of the exercise of such jurisdiction, was not to set up any State laws or regulations in opposition to, or in hostility with the laws of Congress for the disposal of the public lands, but to give a full and complete execution to those laws, by awarding titles to those entitled to them by the laws administered according to the principles of equity and good conscience, which pervade the code of every civilized people. It was considered like the case of two citizens contracting abroad in reference to the laws of a foreign country, and a dispute should afterwards arise here between them respecting their rights, our courts would determine the controversy according to the foreign law.

Our courts utterly disclaim any right to interfere with, or to control the officers of the General Government in the disposal of the public domain. Such a power has not been conferred by Congress on the courts of the U. States; and it would hardly have been given to the State courts. Nor could such a power, on general principles, considering the nature of our government, be considered inherent in the State courts. McLuny vs. Silliman, 2 Wheat. 369; McIntire vs. Wood, 7 Cranch 504. Two persons in good faith, claim a right of pre-emption to the same tract of land. The United States, the owner, declares that he who shall establish his right, to the satisfaction of the Register and Receiver, shall be entitled to the land. These officers determine that one party, in preference to the other, is entitled to the right of pre-emption, and the land is given to him accordingly. On what principle can a court of law or equity interfere with this determination, and grant the land to the disappointed claimant? If the courts could do this, then the right of pre-emption would be determined, not according to the judgment of the Register and Receiver, but in conformity to that of the courts, which would be a manifest violation of the will of the owner of the land.

But if our courts had such a power, would they interfere before the emanation of a patent. The President of the U. States being charged with the duty of seeing that the laws are faithfully executed, withholds or issues a patent, as he is advised the law requires. He is not bound as a matter of course to issue a patent, whenever he is required so to do, by the holder of the Receiver's receipt; but he will look behind it, and see that the holder of the certificate is really entitled to the land, for which a patent is demanded. If the State courts should interfere before a patent is issued, in what a situation would they be placed ? Should this court determine to-day that the complainant was en-

titled to the pre-emption, might not the President to-morrow, give the patent to the defendant? A court would but ill consult its own dignity, in permitting itself to be placed in a situation, where its judgments and decrees might be set at naught with impunity. A court should never command, or direct, but where it can enforce obedience to its orders and decrees. If it be said the court can afterwards, in another proceeding, compel a conveyance of the legal title, such an answer admits that the present suit is premature and unnecessary.

In illustration of the position, that a court has no jurisdiction in cases like this, unaffected with fraud or a trust, although a patent may have issued, we will refer to two cases decided in the English courts of chancery, somewhat analagous to the one now under consideration, the principle of which is, that if a party claims, before the commissioners appointed under the conventions, for indemnifying British subjects for the confiscation of their property by the French Revolutionary Government, in a character which he really sustains, and an award is made to him in that character; a court of chancery has no jurisdiction to interfere at the suit of a party claiming to have a better title to the compensation. Hill vs. Reardon, 3 Condensed Eng. Ch. Rep. 253; Loyd vs. Lord Frimlestown, 6 Con. Eng. Ch. Rep. 134.

In disclaiming for our courts a right to interfere with the sale of the public lands by the general government, in cases where the title has passed without fraud, and unaffected with any trust, we do not wish to be understood as conveying the idea, that they will not interfere in cases where the title has not passed, and in which a party claiming under an act of the federal officers, calls upon our courts to assist him in depriving another of rights enjoyed by him under the laws of the U. States. In these cases our courts will examine his claim to their aid, and will grant, or withhold it, as in their opinion, he may, or may not, be entitled to it. Such cases might have arisen under the late pre-emption laws, and may yet arise, in cases wherein the time for proving up their pre-emptions may not have elapsed. Our statute enables a party to maintain an ejectment on a pre-emption right, and if he can maintain an ejectment on such right, so he can defend one against any person not showing a better title. If the land officers under the late pre-emption laws, had permitted an entry of land on which there was a right of pre-emption, and an ejectment had been brought on the entry against the pre-emptor, he might have proved his right to a pre-emption under the laws, and defeated the action. So if a certificate of the right of pre-emption had been granted to one, before the expiration of the time, within which those entitled to pre-emptions were required to prove them up, and he

had brought his action against the person in possession, entitled to the pre-emption, he must have failed in his action. In such cases, so far from violating any act of Congress, our courts are only carrying those laws into effect, and bestowing the bounty of the government on those for whom it was intended. The cases of Isaacs vs. Steel, 3 Scam. Rep. 103 and Bruner, *et al*, vs. Manlove, *et al*, Ibid 342, decided by the supreme court of Illinois, fully sustain the foregoing doctrine.

Registers and Receivers are executive and ministerial officers. They sometimes act judicially, as in determining the right of pre-emption, just as we say some of the acts of a sheriff are ministerial, and some judicial. But when we say a sheriff acts judicially, we do not mean that he is a court, and his acts are judgments against which there is no redress or relief, but by appeal, writ of error, or of false judgment. When it is said that an act pertaining to a ministerial office is judicial in its nature, the meaning is, that it cannot be performed by deputy, and that is the use of the distinction between ministerial and judicial acts in executive offices. It is inconceivable on what principle it can be said, that the Register and Receiver are judicial officers in that sense; that their acts, like the judgments and decrees of a court, are binding and conclusive on all the world, until reversed or annulled, according to the principles and usages of law. The Constitution of the U. States, ordains that the judicial power shall be vested in one supreme court, and in such inferior courts, as the Congress may, from time to time, ordain and establish, and that the judges, both of the supreme and inferior courts, shall hold their offices during good behavior. Do the Register and Receiver hold their offices during good behavior? If not, then they are not inferior courts within the meaning of the constitution; and no judicial power, according to the legal meaning of those terms, can be constitutionally vested in them.

There is nothing inconsistent in all this, with what has been before said in relation to the impropriety of our courts interfering in cases, where a patent has been granted to a pre-emptor by the President of the U. States, in pursuance of a decision of the Register and Receiver. Their refusal to give relief in such cases, does not proceed from the consideration, that the act of these officers is a judgment from which there is no appeal, and which is binding and conclusive on the whole world. Far from it. The United States is the owner of the public lands, and can dispose of it on such terms, and in such manner, as seem fit. It is declared by law, that he shall have a title, who can show himself entitled to it, to the satisfaction of the Register and Receiver. In a case free from all fraud and collusion, these officers declare that a particular

individual, to their satisfaction, has proved himself entitled to a tract of land, and it is given to him accordingly.   Now do the courts refuse to look into this matter, because the decision of the Register and Receiver is a judgment which is binding, until reversed or set aside, or because it is the will of the owner of the land, that it shall be conveyed as those officers determine, whose action is final?   A father has two sons at school, and he declares that a tract of land shall be given to that one of them, who shall have best demeaned himself, in the judgment of the preceptor.   The preceptor, without fraud or collusion reports in favor of one of them; the land is given accordingly.   Can a court interfere and examine the correctness of the judgment of the preceptor, with a view to give the land to the other son?   Surely not.   But this is not because the report of the preceptor is a judgment, in a judicial sense, binding until it is set aside; but because the owner of the land has prescribed the terms on which it shall be conveyed; the condition is, that it shall be on the judgment of the preceptor, which is final.   And for a court to interfere to correct that determination, would be to give the land, according to the opinion of the court, and not of the preceptor, which would be a manifest violation of the will of the owner.

This case has been treated as one unaffected with fraud, because there is no charge of fraud, but that contained in the general charge of a fraudulent combination, usually inserted near the close of a bill, and although it was formerly held otherwise, yet it is now the practice, when a demurrer is entered to the bill, not to put in answer to the general charge of a fraudulent combination.   Mitford 70, 240; Brooks vs. Lord Whetworth, 1 Mad. Rep. 57; Oliver vs. Haywood, 1 Anstr. 82.

Decree affirmed.


TOMPKINS, J.

The appellent, Edmund Lewis, filed a bill of complaint in the circuit court of Platte county, against Jesse Lewis, in which he complains that he was entitled to the right of pre-emption in the purchase of a certain quarter section of land lying in said county; that the Register and Receiver of the land district in which it lies, had adjudged the said land to the defendant, Jesse Lewis, and prays that the said jesse Lewis be decreed to transfer the said land to the complainant, on his payment of the price, &c., to him, by the complainant.   The circuit court decreed the complainant's bill to be dismissed, and that complainant pay costs.

The complainant claims under the act of 1st of June, in the year 1840, which is entitled "an act supplemental to an act entitled an act to grant pre-emption rights to settlers on public lands," approved 32d June, 1838. And this last act itself revives the act of the 29th of May, 1830, the third section of which provides, "that prior to any entries being made under the privileges given by this act, proof of settlement or improvement shall be made to the satisfaction of the Register and Receiver of the land district in which such lands may lie, agreeably to the rules to be prescribed by the Commissioner of the General Land Office for that purpose."

In the case of Ross vs. Doe, on demise of Burland and others, the Supreme Court of the U. S. decided, that where an act of Congress gave commissioners power to hear and decide all matters respecting settlement rights, and to determine thereon according to justice and equity, and declares their determination to be final, we are bound to presume that every fact necessary to warrant the certificate in the terms of it, was proved to the commissioners. In Wilcox vs. Jackson, 13 Peters, p. 517, it was decided that the Register and Receiver, in deciding on pre-emption rights, are special judicial officers, and that their decision, when they do not exceed their jurisdiction, and act without fraud, is final and conclusive on the United States courts even, and that after the title passes from the United States, the State courts have no right to call in question a title acquired from the United States.

In Matthews vs. Zane, 4 Cranch, 382, and 7 Wheaton, 202, in the same case the Supreme Court of the United States decide (Ch. J. Marshall delivering the opinion of the court,) "that they will protect the purchaser from the United States." It might naturally be supposed that the lands belonging to the United States, no other power would assume to dispose of them. Indeed, in anticipation of any attempt to intermeddle in the sales of the United States land, the 10th article of the State Constitution, in the first section thereof, expressly provides, that "the General Assembly of this State shall never interfere with the primary disposal of the soil of the United States, nor with any regulation Congress may find necessary, for securing the title in such soil to the *bona fide* purchasers." But though Congress have made a regulation for the securing the title in the soil to those who claim a right of pre-emption, they have said that proof of settlement and improvement, satisfactory to their own officers, the Register and Receiver, shall be made by the claimant. Edmund Lewis, the complainant here, fails to make proof satisfactory to those officers, and comes into the State courts, praying them to decree the title out of Jesse Lewis, to whom

the officers of the United States had adjudged the right of pre-emption to himself. Now if the General Assembly of this State shall never interfere with the primary disposal of the soil of the United States, nor interfere with any regulation Congress may find necessary for securing the title in such soil to the *claimant* by right of pre-emption, whom the Register and Receiver, officers appointed for that purpose, have decided to be the *bona fide* purchasers, whence will this court derive its jurisdiction over those lands? Shall it be said that this court has any authority or jurisdiction which is not derived from the constitution of the State, and from the laws made in pursuance thereof? If any law of this State were to confer on its courts the power to take from the purchasers from the United States those lands which they hold under the decisions of the officers of the United States, such law, or rather such act, would be unconstitutional and void. But the legislature have passed no such act. And the courts of Missouri have no more right to exercise a superintending control over the Register and Receiver of the United States, than the United States courts have to exercise such superintending control over the Registers and Receivers of the State of Missouri. Each will be better employed by attending to their own business. If the Register and Receiver of the United States have injured Edmund Lewis, let him lay his complaint before the courts of the U. S., to whom alone those officers can in any event be amenable, and who alone can annul or control their acts.

The circuit court, in my opinion, committed no error in dismissing the bill, and its judgment ought to be affirmed.