545
64....612

## JOSIAS LAMONT, Appellee,

*vs.*

## JOHN STIMSON, impleaded with DAVID W. DAVIS, .Appellant.

### APPEAL IN EQUITY FROM THE MARQUETTE CIRCUIT COURT.

The acts of the register and receiver of the United States land office, in receiving, weighing and determining upon the proofs in relation to pre-emption claims, an *quasi* judicial, and their determination is not subject to revision (?) because no appeal is provided for. (Except in cases where two or more persons have settled upon the same tract of land, and present *antagonistic* claims to the right of pre-emption thereof in which case an appeal lies to the Secretary of the Treasury.

Where the decision of the register and receiver has been procured by fraud, the commissioner of the General Land Office, may withhold the patent, until the matter may be judicially determined.

So where their decision may have been founded upon a material error of fact or law.

In all cases where the land officers act upon a subject within their jurisdiction, under the act of Congress of September 4th, 1841, and no element of fraud or mistake intervenes affecting their decision, it is final and conclusive.

Where a claimant to a pre-emption right has procured-the decision of the land officers in his favor by fraud, the party injured may apply to a court of equity for redress: and it makes no difference whether a patent has issued to the party charged with the fraud or not.

A court of chancery can go behind the patent and administer equity between the parties, by operating upon and controlling the title vested by the patent.

The bill sets forth that on or about the 15th day of May, 1846, the complainant entered at the United States Land Office, at Green Bay, subject to any valid right of pre-emption, the south-west quarter and the south-west quarter of the north-east quarter of section twenty-one, town sixteen, north of range twelve east, containing two hundred acres of land, for which he paid into said land office the sum of two

36

hundred and fifty dollars, and at the time of the payment of said sum there was no valid right of preemption on said land or any portion thereof, nor has there been any since that time.

The bill further states that the complainant still holds said duplicate receipt, and that the same is in full force and unrevoked.

That on or about the 27th day of January, 1846, David W. Davis, one of the defendants in this suit, filed in the said Green Bay land office, a declaratory statement of his having settled upon the south west quarter of said section twenty-one, and of his intention to claim the same as a pre-emption right under the act of September 4th, 1841. That at the time the said Davis filed his said declaration, he was not a resident on said land, had made no improvements, erected no dwelling house, nor had he done so up to the time the complainant entered the same.

The bill further states that on the 6th day of May, 1846, the said Davis, who was a single man and without any family, in company and jointly with a man of the name of Haskins, entered at said land office eighty acres of land lying about eight miles from the land above described, and paid for the same, and devoted their time in making improvements thereon with the intention on their parts of making the same a home for themselves; and before and at the time of the entering of said eighty acres of land, the said Davis frequently declared that he had abandoned his pre-emption on the one hundred and sixty acres aforesaid, and that he did not intend to enter the same.

The bill then next sets forth, that sometime in the winter or spring of 1846, Davis made an arrangement with a man of the name of Thurston to go on and

improve said one hundred and sixty acrrs, and that in consideration of such improvements he would give Thurston one-half of the land, or some other interest therein; that in pursuance of such arrangement Thurston made some improvements, and would have made more, but being informed that Davis was trying to sell his interest, refused to do anything more.

The bill further states that the complainant saw the land before entering it, and knew from personal examination that it had no improvements on it, and that he was informed that Davis had entered other lands and did not intend to enter the said one hun dred and sixty acres, and that Davis had abandoned his pre-emption; and that he inquired at the land of fice of the register and receiver whether Davis' pre emption was valid, and was informed by them that it had no validity, and that he might enter and pay for the same if he thought proper. Under such assurances he paid the money and took a duplicate receipt; and he says he would not have bought the land had it not been for such assurances, and that he supposed Davis had abandoned his pre-emption.

The bill then goes on to state, that Davis would have neglected to enter the land, or claim any right to the same, had not one Samuel W. Beall desired to participate in the anticipated profits, and who proposed to assist Davis in proving up his pre-emption, and furnish the money to enter the land, and share the profits—which proposition was accepted by Davis, and in pursuance of such agreement, Davis, afterwards and within one year from the 27th day of January, 1846, went to the land office at the Bay, and made oath, &c., which oath, as set forth, is in form as prescribed by said act of Congress. The bill then char-

ges that the oath was not true in the following particulars, to-wit : it was not true that he had settled upon and improved the land and erected a dwelling house, or that he had settled upon it for his own exclusive benefit, or that he had not made any agreement or contract with any person, &c.   The bill next states that after Davis had made said oath, and had proved by some person that he had made improvements on the land, and had erected a dwelling house thereon, and had resided in the same, the officers of said land office permitted said Davis to enter the land, and gave him a duplicate thereof.

The bill then states, that on the 5th day of May, 1847, Davis executed and delivered to Beall a warrantee deed of the one hundred and sixty acres, and that the deed was given in pursuance of the agreement before set forth ;   that the deed has since been recorded in the office of register of deeds of the county of Marquette ; that the patent was issued to Davis by the President in November, 1848, and was received by Beall and has since been recorded in the office of said register.

The bill charges that at the time of said agreement, the said Davis and Beall knew the complainant had paid for said one hundred and sixty acres on the said 15th of May, 1846, and had a duplicate of the same, but that conspiring, &c., obtained by the frauds and misrepresentations aforesaid, the privilege of entering the land.

The bill further states that Beall and wife on the 23d day of July, 1849, conveyed the one hundred and sixty acres to John Stimson, and charges that "Stimson bought and paid for the land with a full knowledge of your orator's rights."

Prayer, that Davis and Stimson be ordered and directed to relinquish all right and title, &c., in said land, and that the deed from Beall and wife to Stimson be delivered up and cancelled, and that the said Davis be ordered to convey the title to complainant, &c.

To this bill the defendant Stimson filed a general demurer, which after argument, was overruled, and from that decision the said Stimson appealed to this court.

*Alvah Hand* for the appellee.

*Collins, Smith & Keyes* and *A. B. Hamilton* for the appellants.

*By the Court*, CRAWFORD, J. The bill of complaint in this cause states, that about the 15th day of May A. D. 1846, at the United States Land Office at Green Bay, the complainant entered, purchased and paid for two hundred acres of land, a description of which is given in the bill, and that his said purchase was made subject to any valid pre-emption to said land; that he received the usual duplicate receipt from the receiver, which he still holds; that on or about the 27th day of January, A. D. 1846, the defendant Davis filed in the same land office a "*declaratory statement*" of his intention to claim the right of pre-emption of the south-west quarter of section twenty-one, in township sixteen north, of range twelve east, containing one hundred and sixty acres, the same being a portion of the lands subsequently entered and purchased by the complainant, which claim to the right of pre-emption was made under the act of Congress of September 4th, A. D. 1841.

The bill further states that at the time of the filing of the said declaratory statement, Davis was not resident upon the land before described, and had not at that time erected any dwelling-house or made any improvements thereon, nor had he done so up to the date of the complainant's purchase.

It also states that Davis, being an unmarried man, in May, 1846, did then jointly with one Haskins, purchase and enter at the same land office a tract of land containing eighty acres, situate about eight miles from the land which he sought to obtain by pre-emption, that the defendant Davis and Haskins made improvements on the said tract of land entered by them with the intention of making their home there, and that Davis frequently declared he did not intend to insist upon his aforesaid pre-emption claim, but had abandoned it.

It is further stated in the bill, that in the spring of 1846, the defendant Davis made an agreement with one Thurston, by which the latter was to go upon the land in controversy and make improvements thereon, and in consideration thereof, Davis would give Thurston one-half or some part of the land; that Thurston accordingly did make some improvements, but doubting the sincerity of Davis, discontinued the improvement.

The bill further states that from his own examination of the land, the complainant knew before he entered said land, that there were no improvements thereon; that he also knew from information that Davis did not intend to purchase said lands, that he had purchased other lands, and was informed of the agreement between Davis and Thurston; that the complainant made his entry and purchase aforesaid

after he had been assured by the register and recei-

ver at the Green Bay land office, that the pre-emp- tion claim of Davis was invalid, and that if he had not believed the claim of Davis to have been aban- doned, he would not have made the entry and pur- chase of the land.

The complainant then proceeds to state and charge that one Samuel W. Beall proposed to the defendant Davis, to assist him in proving his pre-emption right and to furnish the money to pay for the land in con- sideration that he (Beall,) should receive a share of the benefits, which proposition was accepted by Da- vis, and in pursuance thereof, within one year after the making and filing of his " declaratory statement," he made the oath required on the part of the appli- cant for a pre-emption under the act of Congress of September 4th, 1841, and produced the necessary ac- companying evidence, and thereupon the land officers permitted said Davis to enter and purchase the said one hundred and sixty acres of land ; that the oath of said Davis and the evidence produced by him were false and untrue and the land officers were mis- led thereby.

He further states that the land in question was af- terwards conveyed by Davis to Beall, in pursuance of their corrupt agreement ; that a patent for said land has been issued by the President of the United States to said Davis, and has been received by Beall, and it charges that Davis and Beall well knew at the time of their corrupt agreement, that the complain- ant had entered the land in controversy, and paid therefor, and that conspiring together, &c., to defraud the complainant, by frauds and misrepresentations procured the entry of the land. By an amended

June Term
1854.

Lamont
vs.
Stimson.

bill it is shown that the appellant, John Stimson, acquired a title to the land by a deed of conveyance from Beall, with a full knowledge of the complainnt's rights, and Stimson is made a defendant. The relief prayed for is that the defendant, Stimson, be decreed to execute to the complainant a proper conveyance of the land, and there is also the usnal prayer for general relief.

The defendant Stimson, filed a general demurrer to the bill, which, after argument, was overruled, and the cause has been brought before us by an appeal from the order overruling the demurrer.

Two questions arise in this case. First,—is the decision of the register and receiver of the land office, upon the claim of a party to enter a tract of land by pre-emption right, conclusive upon the subject; and second, can a party aggrieved by the decision of the land officers, resort to a court of equity for relief in any case?

By section 15 of the act of Congress of September 4, 1841, where a person has, after the passage of that act, settled upon and improved a tract of land, and desires to secure to himself a right of pre-emption thereof, he must within thirty days next after the date of his settlement upon the land, file with the register of the land district in which the land is situated, a written statement describing the land, and de claring his intention to claim a pre-emption right thereto, and within twelve months next after the date of the settlement, make "the proof, affidavit, and payment" required by the act in order to avail himself of the benefits there by afforded. The *proof* thus required, is specified in the twelfth section of the act. and relates to the "settlement and improvement" of

the land, which proof must be made to the satisfaction of the register and receiver of the land district in which the land is situated, in pursuance of rules on that subject, prescribed by the Secretary of the Treasury. The form and substance of the affidavit to be made by the claimant, is embodied in the thirteenth section of the act.

The sufficiency of the proof required under this act is entirely committed to the determination of the register and receiver, and in deciding upon it they must necessarily exercise their *judgment* in the same manner that any judicial officer exercises his judgment in ascertaining and determining facts from evidence adduced before him, according to the provisions of the law, which empowers him to adjudicate upon the subject. Here is involved not merely the performance of a formal ministerial act, but the exercise of what is a *quasi* judicial function, for the result or conclusion arrived at by the officers, from the evidence before them, is the dictate of their own judgment, and they cannot be compelled to alter it, or arrive at any other. Neither is the decision of the officers in such a case subject to revision or reversal by any other officer or tribunal, because the act does not provide an appeal from the decision of the register and receiver. By the eleventh section of the act, in cases of conflicting claims to a pre-emption by *different settlers*, an appeal may be taken to the Secretary of the Treasury of the United States, but this right of appeal applies only to cases where two or more persons have settled on the same tract of land, and present antagonistic claims to the right of pre-emption thereof.

It has been repeatedly held that in cases of this

nature, where the subject matter has been within the jurisdiction of the land officers, and no circumstances of fraud, misrepresentation or mistake have intervened, the decision of the officers is conclusive upon the rights of the parties. To this effect are the cases of *Lytle et. al. vs. the State of Arkansas*, 9 *How*, 314, 333; *Wilcox vs. Jackson ex. dem McConnell*, 13 *Peters*, 498; *Bennett vs. Farrar*, 2 *Gilm*. 598.

But where the determination of the register and receiver has been procured by fraud, the party injured is not without redress, for by a proper application setting forth the facts to the commissioner of the general land office, the issuing of a patent for the land would be deferred until the rights of the parties could be adjudicated in a judicial proceeding. The act of Congress of 29th May, 1830, concerning pre-emption rights, is, in respect to the question now under conssderation, very similar to the act of Sept. 4, 1841, and under the former act, as well as the act of 19th June, 1834, the Atttorney General of the United States, in an opinion given on the 21st April, 1836, says, "I think it very clear that the commissioner of the general land office may lawfully suspend the execution of letters patent in every case where he shall be satisfied that the decision of the register and receiver was obtained by fraud, or was founded on material error of fact or of law, until the decision of the judiciary or the direction of Congrss can be obtained."

Very soon after this opinion was given, (on the 6th day of May, 1836,) the President of the United States approved certain rules relating to pre-emption cases, prepared by the Secretary of the Treasury, with the advice of the Attorney General," which recognize the conclusive effect of the decision of the register and

receiver, in all cases in which they act within the scope of the authority given to them, but also recognizing the right of withholding the patent in cases where there is good reason to believe that the decision of the land officers was obtained by fraud, or founded in material error of fact or of law. *Vide Public Land Laws, Opinions, &c., Part 2, pp. 84, 92.*

We believe that in every case in which the land officers act upon a subject within their jurisdiction under the act of Sept. 4, 1841, and no element of fraud or mistake intervenes affecting their decision, it is final and conclusive upon the parties, and cannot be questioned in any other proceeding.

It is very clear, however, that where the claimant in whose favor the land officers have awarded the right of pre-emption, has practiced fraud in procuring such decision, the party thereby deprived of a right or benefit to which he is entitled by the law, may just as appropriately invoke the aid of a court of equity to relieve him, as in any other case of fraud, in justice or mistake falling within the cognizance of such a court. And it can make no difference that a patent for the land in controversy has, as in this case, been issued by the United States, to the party charged with practicing fraud. The court of chancery can reach behind the patent, and administer equity between the parties by operating upon the title vested by the patent. In the case of *Brush vs. Ware et. al.* 15 *Peters*, 93, it was held that " where an equitable right, which originated before the date of of the patent, whether by the first entry or otherwise, is asserted, it may be examined."

So also in *Bagnell et. al. vs. Broderick,* 13 *Peters,* 436, 451, it was held that " where the title has passed

out of the United States by conflicting patents, as it had in the case of 6 *Peters*, there can be no objection to the practice adopted by the courts of Mississippi, to give effect to the better right, in any form of remedy the legislature or courts of the State, may prescribe."

The power of a court of equity to entertain a bill like the one before us, and to give relief in such a state of case, as is set up in this bill, is so well established both upon principle and authority, that we deem it unnecessary to do more than refer to some of the cases adjudicated. *Vide Lewis vs. Lewis*, 9 *Mo.* 182 ; *The United States vs. Hughes*, 11 *How*, 552 ; *Jackson ex. dem. Mancius vs. Lawton*, 10 *John.* 23 ; *Jamison vs. Doe ex. dem. Beaubien*, 3 *Scam.* 113 ; *Bodley et. al. vs. Taylor*, 5 *Cranch.* 221, 223.

By section 41 of chapter 84 of our Revised Statutes, when a bill in chancery charges a defendant " *with any fraud whatever affecting the right of property of others,*" he shall be compelled to answer the bill, and under this section the defendant would be required to answer the charge of fraud contained in this bill.

It is not necessary to discuss the other points insisted upon in the argument of the counsel for the appellant, as we are entirely satisfied that the demurrer was very properly overruled.

The decretal order of the circuit court is therefore affirmed, with costs, and the cause must be remanded for further proceedings.