SAMUEL D. HILL, Respondent, *v.* J. W. MILLER, Appellant.

1. *Lands—Pre-emptions—Equity.*—The act of Congress concerning pre-emptions gives the officers of the Land Department the right to determine all questions arising between different settlers. The fee of the lands in this State being originally in the Government, and Congress being vested exclusively with the primary disposal of the soil, the presumption is in favor of the action of the officers designated to execute the laws made for that purpose. Where the officers are vested with discretionary authority, their acts are not subject to the revision of our courts; but when they act without authority of or in violation of law, then jurisdiction will be assumed. A patent carries the legal title, and the presumption is that all necessary preliminary steps have been taken, and in favor of its validity; and the burden of proof is upon him who impeaches it.

2. *Practice—Pleading—Equity—Fraud.*—A petition which seeks to set aside a patent and to hold the patentee as trustee, upon the ground of fraud, must be as definite and precise as was formerly required on a bill in chancery. It is not sufficient to make a general allegation of fraud without any other specifications of the acts which constituted it.

*Appeal from Daviess Circuit Court.*

Upon the trial, the court, at the instance of the plaintiff, declared the law to be as follows:

1. That the certificate of entry, read in evidence by plaintiff, is *prima facie* evidence that the pre-emption law, upon which the same is founded, was complied with by plaintiff before said entry was made.

2. That if plaintiff complied with said pre-emption law in making said entry, and obtained said certificate from the proper officers of the United States, then after that the said United States was no longer, in equity, the owner of said land, and had no right to sell the same to anybody else.

3. That if said defendant made his said entry, or pur-

chase, of said tract of land from the United States after the date of plaintiff's said entry, and with actual notice thereof, such purchase is a fraud upon plaintiff, and cannot be set up as a defence to this suit.

4. That upon and after plaintiff's said entry of said land, the same, in equity, was no longer the property of the United States, and that thereafter the United States held the mere legal title in trust for the plaintiff, and 'that any subsequent purchaser obtaining the legal title thereto, with notice thereof, would hold the same charged with said trust, and be compelled to convey the same to plaintiff.

5. That the decision of the Register and Receiver in regard to pre-emption rights is conclusive only against the Government, and that when two or more titles to the same tract of land have emanated from the General Government to different individuals, it is competent for our courts to decide upon their respective validity, without being bound by any attempted adjudication thereon by said Land Office in any of the departments.

6. That the certificates and documents from the General Land Office, showing the action of the Land Department, in the attempted vacation of plaintiff's entry, offered in evidence by defendant, did not divest plaintiff of his right, and is no evidence before this court to show that plaintiff did not comply with the pre-emption law in making his said entry.

7. That plaintiff's entry of said land being *prima facie* evidence that pre-emption was complied with by plaintiff, said pre-emption remains good until defendant shows by competent evidence in this court that said law was not complied with, and that the documents and certificates from the General Land Office, read by defendant, is competent evidence *only* to show the *action* of the Land Office in the premises, but not competent to show in this court that said pre-emption law was not complied with.

The defendant then asked the court to declare the law to be,

1. That a patent is better evidence of title than a certifi-

cate of purchase, and must prevail over such certificate, unless it be shown that such patent was obtained through fraud of the rights of the holder of such certificate, and that the business of showing fraudulent obtaining of such patent is upon him who seeks to impeach the same.

2. That the Commissioner of Lands had the right to cancel the entry of plaintiff, and to permit defendant to purchase the lands in controversy, and that his right to do so cannot be inquired into by the courts of this State.

The first of which was given by the court, but the second was refused.

*H. M. & A. H. Vories,* for appellant.

I. The act of Congress entrusted the Register and Receiver and the Commissioner of the General Land Office with the power to decide upon the merits of the respective claims of plaintiff and defendant to the right of pre-emption to the lands in controversy. Their decision, when made, is conclusive between the parties, and cannot be revised or inquired into by the courts of the State of Missouri. (Lewis v. Lewis, 9 Mo. 183, and cases cited; O'Hanlon v. Perry, 9 Mo. 585; Winter v. ———, 18 How. 89.)

The case of O'Brien v. Perry, 28 Mo. 500, does not conflict with the above when properly considered. There, the land was reserved from sale.

II. It is admitted that the courts of the State might interfere in a case where one had obtained a decision in his favor in such case, and obtained a legal title to the land under such circumstances of fraud as to create an implied trust in him for the use and benefit of another. But in the case now under consideration no such specific charge of fraud is made in the petition, and none were attempted to be proved. The only thing charged is, that the plaintiff received the first certificate of entry, which the evidence shows was afterwards cancelled and set aside by the proper authorities; yet the court below, in this case, decides that by said certificate, no matter how obtained, the United States became a trustee for

plaintiff, and that everybody who received title from the Government, with notice of the facts, takes the title with the trust. This is certainly in conflict with the law as heretofore decided by this court. (Lewis v. Lewis, 9 Mo. 183; Bird v. Ward et al., 1 Mo. 498; Stephenson v. Smith, 7 Mo. 610; Carman v. Johnson, 20 Mo. 108.)

III. In this case the evidence shows that the plaintiff's certificate was set aside by the General Land Office, and he notified to apply and get his money back, which in the absence of evidence to the contrary it is presumed he has done, and the defendant has purchased the land and paid the entrance money therefor; and yet the Circuit Court decrees that the defendant shall convey the land to the plaintiff, without refunding the purchase money or any part thereof. For this, if for no other reason, the judgment in this case must be reversed. (Bird v. Ward et al., 1 Mo. 498.)

IV. The patent, read in evidence by the defendant in this case, shows a complete appropriation of the land in controversy, and vests in the defendant the title, all preliminary steps being merged in the patent. No fact behind the patent can be investigated by the State courts, except questions of independent fraud or trust existing between the parties; not merely legal or technical fraud, but actual and positive fraud, in fact, committed by the defendant. (Boardman v. Reed et al., 6 Pet. 328; Singer v. Young et al., 3 Pet. 320; Bagnall et al. v. Broderick, 13 Pet. 436.) No question of notice can be considered in such case. (See Judge McLean's opinion in the case last cited, p. 454; Alison v. Hunter, 9 Mo. 750.)

V. Congress is vested with the sole power to dispose of the public lands, and no State, or the courts thereof, can interfere. (Wilcox v. Jackson et al., 13 Pet. 498.)

And where a patent has not been issued (as is the case with the plaintiff in this case), a State has no power to declare any title less than a patent valid against the claim of the United States to the land, or against any title held un-

der a patent granted by the United States. (Wilcox v. Jackson, *supra.*)

VI. Each of defendant's motions, the one in the arrest of the judgment, and the motion for a new trial in the cause, should have been sustained by the court.

*Ray*, for respondent.

The court committed no error in giving the instructions or declarations of law asked for by the plaintiff, or in refusing the second, asked for by the defendant. (9 Mo. 749; 3 How., U. S., 509; 1 Mo. 281; 11 Mo. 585.) As to the general propriety of the amended petition, upon which the case was tried, see 20 Mo. 108; 7 Mo. 610; 28 Mo. 500; *id* 513.

The defendant below insisted, and the appellant here will doubtless claim, " that the decision of the Register and Receiver, between two parties claiming rights of pre-emption to the same piece of land, is *final,* and cannot be overruled by the State courts." It is admitted that such is the doctrine as laid down in 9 Mo. 183, and several other cases; but in all these cases, but *one* title had ever been issued to one of the contending parties; the other, failing to get, or to have gotten, any title at all. In all that class of cases where this doctrine is held, it will be found upon examination that the unsuccessful party never held or obtained any title whatever, whether inchoate or perfect. But in this case the facts are different. Both parties had obtained and held different and distinct titles to the same lands; both emanating from the same General Government at different times, and evidenced by different species of document, having different effects, &c. One, it is true, was inchoate, the other perfect, so far as was necessary to pass the mere legal title. This is not a case where the parties claiming rights of pre-emption to the same tract of land, make simultaneous application to the Register and Receiver to enter, and when the decision is much in favor of the one and against the other, and

when the successful party only gets a certificate of entry; but it is a case where the plaintiff had first proved up his pre-emption and made his entry, and got his certificate as such, and where, afterwards, the Commissioner of the General Land Office attempts to vacate and set aside the entry thus *once* made, and grant a certificate of entry to another, which is prosecuted to a patent—thus transferring the mere legal title to a junior entry.

No case can be found where *two* titles have thus emanated from the General Government, and a contest arose between our citizens in reference to same in our State courts, but what they have entertained jurisdiction of the cause and inquired into the acts of Federal officers, and, if need be, overhauled them and set them at naught. (11 Mo. 585.)

This proceeding does not invalidate the patent, or seek to impeach the act of the officer granting the same; but recognizes its validity, and asks that the title thus acquired may be transferred to the equitable holder. (20 Mo. 108; 7 Mo. 610, above referred to.)

Plaintiff's certificate of entry made for him a *prima facie* case, which was not attempted to be rebutted by independent original evidence in said court, but only by showing what a different tribunal had decided. The validity of defendant's patent is not called in question as an official act of a competent officer; but defendant's right to the title, thus issued, is denied, and proved by showing that he purchased from the United States with full knowledge of the plaintiff's prior purchase, which is a fraud upon the plaintiff; and he, having thus acquired the legal title in fraud of plaintiff's right, will be required to convey to him.

WAGNER, Judge, delivered the opinion of the court.

Plaintiff in the court below, respondent here, brought his suit in the Daviess Circuit Court, claiming certain land situated in said county, of which the defendant was in possession. The petition contained two counts; the first was in the nature of an action of ejectment, for the recovery of the

possession of the premises; the second was in the nature of a bill in equity, asking that the defendant who held the legal title by patent, might be compelled to convey the same to plaintiff, and also charging that defendant obtained his said title by fraud and falsehood. It also charges that plaintiff had the superior equitable title, by reason of an entry at the Land Office at Plattsburg, Missouri, made in pursuance of the pre-emption laws of Congress, prior to the entry of the said defendant on which the patent issued; and that the defendant made his entry and acquired title with full notice of this fact.

The defendant, in his answer, denied explicitly all the averments contained in the first count in the petition, except the fact that he was in possession of the premises. He further denied that he was guilty of any fraud or falsehood in making his said entry, or in obtaining his patent; or that plaintiff had any right or title to the said premises by equity and good conscience. For further answer and defence, he alleges that plaintiff committed a fraud on the Government in proving up his pre-emption claim, and that, upon the discovery thereof, his said right of pre-emption was set aside, vacated and cancelled; and that at the time he made his entry, the land was the absolute property of the United States Government, divested of all liens or claims in favor of any person whatever.

This trial was had before the court without the intervention of a jury.

· The plaintiff, to maintain his action, read in evidence a receipt from the Receiver of the Land Office for $120, dated May 18, 1855, in payment of the land named in the petition. He then introduced testimony to show that he commenced building a house on the land, to avail himself of the pre-emption act, anterior to his entry, and that the defendant had actual notice thereof. The plaintiff here closed his case.

The defendant then read in evidence the patent of the United States conveying the land to him, dated October, 1859; also copies, duly exemplified, of all the papers and

proceedings in the matter of the plaintiff's entry, had in the Land Office at Plattsburg, and before the Commissioner of the General Land Office at Washington City. It seems that on an affidavit being made and transmitted to the Commissioner, that the plaintiff had failed to comply with the law granting pre-emptions, the Commissioner addressed a communication to the Register and Receiver, directing them to investigate the truthfulness of the allegation contained in the affidavit, and report to him their opinion thereon. In pursuance of this authority from the Commissioner, the officers of the Land Office, after notifying the plaintiff to appear and contest his claim, proceeded to examine and investigate the alleged fraud. Witnesses were examined, and the evidence tended to show that plaintiff's entry was simulated and a palpable evasion of the pre-emption law; the officers of the Land Office both concurred in the opinion that it was fraudulent and ought to be vacated. The evidence, with the opinion of the officers accompanying, being sent to the Commissioner at Washington City, he concurred in opinion with said officers and ordered them to cancel the entry, and notify the plaintiff to apply and get his money in the usual way. After the action of the Commissioner and officers of the Land Office in vacating and cancelling plaintiff's said entry, defendant then applied, duly complied with the law, entered the land, and received his patent.

Plaintiff objected to receiving this evidence for any other purpose than to show the action and decision of the officers themselves; and this view of the law appears to have been sustained by the court, as shown by the seventh instruction. There was no finding of the court on the first count.

The court then made a decree, divesting defendant of the legal title of the premises and vesting the same in the plaintiff.

Defendant then filed his motion for a new trial and in arrest of judgment, which, being overruled by the court, he excepted, and brings his case here by appeal.

13—VOL. XXXVI.

The act of Congress concerning pre-emptions gives to the officers of the Land Department the right to determine all questions arising between different settlers; and one of the principal points involved in this case is, whether their decision is final and conclusive, or subject to review in the State courts.

The decisions in this court are far from being harmonious; indeed it is impossible to reconcile them. It is obvious that where titles emanated from the General Government and a contest arises on their validity between citizens of this State, our courts must assume jurisdiction, else there would be a total denial of justice; no other tribunal has been authorized by law to take cognizance of such cases. But the fee to all our lands being originally in the Government, and Congress being vested exclusively with the primary disposal of the soil, the presumption is in favor of the action of the chosen or designated officers or agents who are clothed by that body with power to carry out and execute its laws made for that purpose. Where the officers are vested with discretionary authority, their proceedings are not liable to be reviewed or revised by this court; but when they act in disregard or violation, or without authority of law, then jurisdiction will be assumed. A patent carries the whole legal title to the patentee, and the presumption of law is that all preliminary steps have been complied with and in favor of its validity; hence when a party impeaches the validity of a patent, the *onus* or burden rests on him to show that it is illegal or void.

In this case, did the officers of the Land Office, together with the Commissioner, transcend their legitimate duties or act without law? An interference will never be allowed, unless their action is plainly fraudulent or not within the scope of their power; and he who seeks to stamp them with the impress of fraud, or raise a trust in his behalf, must adduce evidence thereof the most clear and satisfactory. Judge Scott has said, " the United States is the owner of the public lands, and can dispose of it on such terms and in such man-

ner as seems fit. It is declared by law that he shall have a title who can show himself entitled to it to the satisfaction of the Register and the Receiver. In a case free from fraud and collusion, these officers declare that a particular individual, to their satisfaction, has proved himself entitled to a tract of land, and it is given to him accordingly." He then lays down the doctrine in the broadest manner that their decision is final and conclusive, and that this court cannot examine into the correctness of their judgment. (Lewis v. Lewis, 9 Mo. 182.)

In Perry v. O'Hanlon, 11 Mo. 585, Perry, as assignee of Vallé, filed his claim with the Recorder of Land Titles for six hundred and thirty-nine acres of land; this claim was rejected by the first Board of Commissioners. Another board was subsequently appointed by act of Congress who were authorized and required to examine claims of this description. Testimony was taken before the board in relation to it. Before any action was had on this claim, however, Perry, in 1834, attempted to avail himself of the pre-emption privileges granted to the claimants who were willing to waive their claims and relinquish to the United States. According to the law in such cases made and provided, he executed his deed of relinquishment for the aforesaid lands, which was regularly filed in the office of the Recorder of Land Titles, and an abstract of which was duly transmitted to the Register and Receiver. The law required that the application should be made within a certain time and before the expiration of the time allowed by law. Perry applied to the Register and Receiver to enter the land; the officers refused the application on the ground that the surveys were incomplete. Afterwards, when the surveys had been completed, he made application to enter, but the application was refused on the ground that the law had expired. The subject was then brought to the notice of the head of the department, and the land officers were advised, that when application had been made in due time and entries were not permitted for want of surveys, or from any other cause not

attributable to the fault or negligence of applicants, it was the custom of the Land Department to permit such entries to be made notwithstanding the expiration of the law. Perry was accordingly permitted to enter. Upon subsequent investigation, the Commissioner of the General Land Office, being satisfied that Perry was not an actual settler on the land, directed his certificate to be cancelled. A patent then issued to O'Hanlon. It was clearly shown that it was not by any fault, negligence or culpable act of Perry that the entry was not made. He had relinquished his rights for a confirmation of his claim, fully complied with the law, and made his application in due form before the law expired. The court held the patent void.

The uniform custom of the Land Department, acting under the sanction of its legal advisers, permitted such entries where they were not made in time, without the default of the claimant, but owing to the negligence or remissness of the officers of the Government. The action of the Commissioner of the Land Office in this case was very arbitrary, and inflicted great injustice on Perry.

There is a marked difference between that case and the one now under consideration. There was no imputation of fraud or unfair dealing; but, on the contrary, Perry had fully come up to every requirement of the law, and faithfully performed his part of the contract. Here the officers whose duty it was to examine into the transaction, after a full examination find the respondent violated the very law under which he seeks protection. We have been referred by the counsel for the defendant to the case of Carroll v. Stafford, 3 How. 441 ; but, upon an examination of that case, we do not think it sustains his position. That case arose out of a law of Michigan, assessing all lands for taxation in that State as soon as they were entered and before patent issued. The law was resisted mainly because, before patent issued, the legal title was still in the United States, and the Government might refuse to make out and deliver a patent to the holder of the certificate.

Mr. Justice McLean, in delivering the opinion of the court, uses the following language: "When the land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held for it a final certificate which could no more be cancelled by the United States than a patent. It is true, if the land had been previously sold by the United States, or reserved from sale, the certificate, or patent, might be recalled by the United States, as having been issued through mistake. In this respect there is no difference between the certificate-holder and the patentee. It is said, the fee is not in the purchaser, but in the United States, until the patent shall be issued. This.is·so, technically, at law, but not in equity."

It would seem that this emphatic language, taken alone, would be decisive and controlling authority in favor of the proposition contended for; but it is directly qualified and explained in the after part of the opinion, wherein the learned Judge says: "The Government has no right to refuse a patent to a *bona fide* purchaser of land offered for sale. But where there has been fraud or mistake, the patent may be withheld, and every purchaser at a tax sale incurs the risk as to the validity of the title he purchases. He incurs the same risk after the emanation of the patent."

It is, then, the good faith of the entry that gives it its force and validity. This substantially harmonizes with the views of Judge Napton, in Perry v. O'Hanlon. Where a patent is issued for land by officers of the United States, the presumption is that it is valid and passes the legal title; but this may be rebutted by proof that the officers had no authority to issue it. (Minter v. Crommelin, 18 How. 871.) So, too, where the patentee obtains his patent by fraud, and with notice of an existing prior entry, he will be held a trustee for the person equitably entitled. The bad faith vitiates the transaction and defeats the mere legal title. But fraud will not be presumed; the party alleging it must prove it. In this case the Register, Receiver and Commissioner of the General Land Office had undoubted jurisdiction for the

purpose of inquiring into the matter, and their decision will be presumed to be correct.

The respondent shows no cause of action in his petition; the mere allegation of fraud without any other specifications is not sufficient in a proceeding of this kind.   It should have been as definite and precise as was formerly required of a bill in chancery.

The evidence was wholly insufficient to impress the appellant with fraud, or subject him to the character of a trustee. He did not purchase the land till respondent's entry had been cancelled or vacated for a fraudulent evasion of the pre-emption law, and there is no evidence of bad faith on his part.   Mere constructive legal fraud will not answer here; it must be actual, positive fraud.   This being in the nature of an equitable proceeding, we pay no regard to the instructions of the court below.

The judgment is reversed.   The other judges concur.